IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE MARIE BOWKER, | ) | CASE NO.  5:25-CV-00394-JDG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Plaintiff, Julie Marie Bowker ("Plaintiff" or "Bowker"), challenges the final decision of Defendant,

Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying her application for a Period

of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act,

42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

In October 2017, Bowker filed an application for POD and DIB, alleging a disability onset date of

June 25, 2016,[2] and claiming she was disabled due to fibromyalgia, numbness in hands, memory loss, and

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

[2] As the prior ALJ noted, "Both procedurally and substantively significant to this decision is the fact that
the claimant had appealed through the ALJ hearing level a prior Title II application on June 18, 2014, the
initial and reconsideration denial determinations made on which was ultimately affirmed by a **June 24, 2016**
decision of ALJ Mary Lohr (Ex. C1A). Just as importantly, ALJ Lohr's decision became the
administratively final decision of the claimant being "not disabled" from the previously alleged onset date
on March 1, 2013 through June 24, 2016, by effect of the Appeals Council's July 25, 2017 denial of the
claimant's request for review thereof (Ex. C2A; *and see* Ex. C3A/2)." (Transcript ("Tr.") at 547) (emphasis
in original).  The alleged onset date is the day after ALJ Lohr's decision.  (*Id.* at 548.)  Therefore, the relevant

1

sleeping issues.  (Transcript ("Tr.") at 93, 548.)  The application was denied initially and upon reconsideration, and Bowker requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 15.)

On August 22, 2019, an ALJ held a hearing, during which Bowker, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On September 9, 2019, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id.* at 15-24.)  The ALJ's decision became final on July 29, 2020, when the Appeals Council declined further review.  (*Id.* at 1-6.)

Bowker filed a complaint to challenge the Commissioner's final decision.  (*See id.* at 634-35.)  On June 2, 2021, on joint stipulation of the parties, the Court remanded the case back to the Commissioner for further administrative proceedings pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g).  (*Id.* at 636.)

On March 26, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded the case to another ALJ for resolution.  (*Id.* at 638, 640-41.)

On January 18, 2023, an ALJ held a hearing, during which Bowker, represented by counsel, and an impartial VE testified.  (*Id.* at 547.)  On February 10, 2023, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id.* at 546-74.)  Bowker declined to submit a request for review to the Appeals Council, choosing instead to file an appeal directly with this Court.  (*Id.* at 1246.)  On February 22, 2024, the Court vacated and remanded the case back to the Commissioner for further administrative proceedings pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g).  (*Id.* at 1243.)

On November 19, 2024, an ALJ held a hearing, during which Bowker, represented by counsel, an independent medical expert ("IME"), and an impartial VE testified.  (*Id.* at 1159.)  On December 20, 2024, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id.* at 1159-69.)

---

period in this appeal consists of a six-day period from June 25, 2016, the alleged onset date, to June 30, 2016, Bowker's date last insured.

On February 28, 2025, Bowker filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6-7.)  Bowker asserts the following assignments of error:

(1) At Step Five of the Sequential Evaluation, the ALJ committed harmful error when she found that there were a sufficient number of jobs Plaintiff could perform in the national economy.

(2) The ALJ erred when she failed to adopt the totality of the limitations set forth by the Medical Expert in this matter.

(3) The ALJ failed to support her RFC with substantial evidence when she applied the wrong standard of review by adopting the findings of the prior Administrative Law Judge.

(4) The ALJ erred when she failed to support and/or address consistency with her conclusions regarding the opinions of the treating source.

(Doc. No. 6.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Bowker was born in November 1971 and was 44 years-old at the time of her date last insured (Tr. 1167), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. § 404.1563(c).  She has at least a high school education.  (Tr. 1168.)  She has no past relevant work.  (*Id.*)

### B.    Relevant Medical Evidence[3]

On December 6, 2016, Bowker saw Gregory Bonavita, M.D., for her two-year follow up appointment regarding her POTS, VPCs, and palpitations.  (*Id.* at 288.)  Bowker endorsed continued occasional positional lightheadedness but denied headache, confusion, visual disturbance, and shortness of breath.  (*Id.*)  Bowker reported good compliance with treatment, that her symptoms were improving, and

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  In addition, as Bowker challenges only the ALJ's physical findings, the Court further limits its discussion of the evidence to Bowker's physical impairments.

that she was better.  (*Id.*)  Bowker denied chest pain, claudications, difficulty breathing with exertion, fainting/blacking out, leg pain and/or swelling, palpitations, shortness of breath, joint pain, and muscle pain. (*Id.* at 289.)  A physical examination of the chest, lungs, cardiovascular system, abdomen, peripheral vascular system, and neurological system revealed normal findings.  (*Id.* at 290.)  Dr. Bonavita found a normal gait and station, normal muscle strength and tone, and no impairment of recent or remote memory. (*Id.*)  Dr. Bonavita determined Bowker's POTS was stable on her current regimen, her VPCs were suppressed by her current regimen, and her intermittent palpitations were better.  (*Id.* at 291.)  Bowker was to follow up in two years.  (*Id.*)

On October 25, 2017, Bowker and her husband completed an Adult Function Report.  (*Id.* at 221-28.)  Bowker reported her impairments prevented her from lifting, frequently stooping, crawling, and climbing.  (*Id.* at 221.)  She cannot work the fast-paced jobs she used to do.  (*Id.*)  She cannot stand long because she gets severe pain.  (*Id.*)  It hurts her hands to open and close doors or even use a key.  (*Id.*)  She must elevate her legs, or they hurt from being down.  (*Id.*)  Her pain keeps her from sleeping unless she sleeps in a warm tub of water.  (*Id.*)  She spends her days washing up, getting dressed, and then sitting on the couch with her feet up on a stool until bedtime.  (*Id.* at 222.)  Her husband cares for their cat.  (*Id.*)  Her husband helps her dress, bathe, do her hair, and shave.  (*Id.*)  She can feed herself, although she cannot stand to cook, and she can use the toilet with severe pain.  (*Id.*)  She usually wears a nightgown all day because it hurts to change clothes.  (*Id.* at 223.)  She needs reminders from her husband to take her medicine.  (*Id.*) Her husband or her daughter prepare meals and freeze them so she can just microwave them.  (*Id.*)  Her husband and daughter do the indoor and outdoor chores.  (*Id.*)  Her husband drives so she doesn't have to drive.  (*Id.* at 224.)  She sits in the back seat with her legs stretched out since it hurts too much to leave them down for long.  (*Id.*)  Her husband does the shopping.  (*Id.*)  Every once in a while, she will shop using a cart, but it hurts her back, so she does not spend much time in the store.  (*Id.*)  Her husband pays the bills.

4

(*Id.*)  She spends most of her time watching TV because it is all she can do.  (*Id.* at 225.)  Her parents and her two older children visit her at her house once a month.  (*Id.*)  She doesn't go anywhere.  (*Id.*)  Her husband accompanies her to the doctor.  (*Id.*)  She does not have problems getting along with others.  (*Id.* at 226.)  She has poor concentration because of her pain and poor memory because of "fibro fog."  (*Id.*)  She can walk a little less than half a block before needing to sit with her feet up, and the pain is bad afterwards. (*Id.*)  She cannot pay attention for long.  (*Id.*)  Her short-term memory problems interfere with her ability to follow spoken instructions.  (*Id.*)  She uses a walker to get out of bed if she is home alone and uses a cane to get off the toilet.  (*Id.* at 227.)  She is in pain all the time.  (*Id.* at 228.)

On January 30, 2018, Dr. Singh completed a Medical Assessment of Ability to Do Work-Related Activities (Physical).  (*Id.* at 330-33.)  Dr. Singh opined that Bowker could "regularly work" two to three hours a day and would be absent 10-15 days per month.  (*Id.* at 330.)  Dr. Singh further opined that standing and walking were affected by Bowker's impairments, and that she could stand/walk for a total of two hours in an eight-hour workday and "1/10 hours" without interruption.  (*Id.*)  Dr. Singh listed POTS as the medical findings supporting his opinion regarding Bowker's ability to stand and walk.  (*Id.*)  Dr. Singh further opined sitting was not affected by Bowker's impairments, and that she could sit for four hours in an eight-hour workday and sit for half an hour without interruption.  (*Id.* at 331.)  Dr. Singh did not identify any medical findings to support his opinion regarding Bowker's ability to sit.  (*Id.*)  Dr. Singh further opined Bowker's ability to lift and carry was affected by her impairments, and that she could occasionally carry 10 pounds and frequently carry five pounds.  (*Id.*)  Dr. Singh cited treatment notes from September 2017 and December 2017 in support of his opinion regarding Bowker's ability to lift and carry.  (*Id.*)

Dr. Singh further opined Bowker could occasionally climb, balance, stoop, crouch, kneel, and crawl. (*Id.*)  Dr. Singh did not identify any medical findings to support his opinion regarding Bowker's postural limitations.  (*Id.*)  Dr. Singh further opined Bowker could occasionally reach, handle, finger, feel, and

5

push/pull.  (*Id.* at 332.)  Dr. Singh did not identify any medical findings to support his opinion regarding these limitations.  (*Id.*)  Dr. Singh further opined Bowker should avoid heights, moving machinery, and temperature extremes because of her dizziness and mental fog.  (*Id.*)  Dr. Singh opined other impairments affected Bowker's ability to work eight hours a day, five days a week, and cited December 2017 treatment notes in support.  (*Id.* at 333.)  Dr. Singh stated he had been treating Bowker since March 2013 and her conditions had existed for more than five years.  (*Id.*)

On May 10, 2019, Dr. Singh wrote a letter stating that Bowker was unable to work because of her medical conditions.  (*Id.* at 354.)  Dr. Singh opined that Bowker had failed conservative treatment and he did not anticipate Bowker being able to work in the next twelve months.  (*Id.*)  Dr. Singh noted he had advised Bowker to file for disability.  (*Id.*)

On June 30, 2019, Dr. Singh completed another Medical Assessment of Ability to Do Work-Related Activities (Physical).  (*Id.* at 444-47.)  Dr. Singh opined that Bowker could "regularly work" 0 hours a day and would be absent 30 days per month.  (*Id.* at 444.)  Dr. Singh further opined that standing and walking were affected by Bowker's impairments, and that she could stand/walk for a total of one hour in an eight-hour workday and "1/10 hours" without interruption.  (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to stand and walk.  (*Id.*)  Dr. Singh further opined sitting was affected by Bowker's impairments, and that she could sit for four hours in an eight-hour workday and sit for 1/6 of an hour without interruption.  (*Id.* at 445.)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to sit.  (*Id.*)  Dr. Singh further opined Bowker's ability to lift and carry was affected by her impairments, and that she could occasionally carry five pounds and frequently carry five pounds.  (*Id.*)  Dr. Singh cited June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to lift and carry.  (*Id.*)

Dr. Singh further opined Bowker could less than occasionally climb, balance, and stoop, and that she could never crouch, kneel, and crawl. (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's postural limitations.  (*Id.*)  Dr. Singh further opined Bowker could less than occasionally reach, handle, finger, feel, and push/pull. (*Id.* at 447.)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding these limitations.  (*Id.*) Dr. Singh further opined Bowker should avoid humidity, vibrations, and "other."  (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's need for environmental restrictions.  (*Id.*)  Dr. Singh again opined other impairments affected Bowker's ability to work eight hours a day, five days a week, and cited June 2019 treatment notes in support.  (*Id.* at 446.)  Dr. Singh stated he had been treating Bowker since 2013.  (*Id.*)

In January 2023, Dr. Singh completed a Physical Medical Source Statement.  (*Id.* at 1152-55.)  Dr. Singh reported he had treated Bowker since 2013 and her diagnoses consisted of fibromyalgia, small nerve fiber neuropathy, chronic neck pain, and chronic low back pain.  (*Id.* at 1152.)  Dr. Singh listed fatigue, generalized body pain, and frequent headaches as Bowker's symptoms and cited December 2022 treatment notes in support. (*Id.*)  Dr. Singh opined Bowker could sit for 30 minutes before needing to get up and stand for 15 minutes before needing to sit down.  (*Id.* at 1153.)  She could sit and stand/walk for less than two hours in an eight-hour workday.  (*Id.*)  Bowker would need to walk around for three minutes every half hour.  (*Id.*)  She would need unscheduled five to fifteen-minute breaks because of her muscle weakness, chronic fatigue, and pain/paresthesias and numbness.  (*Id.*)  She did not need to elevate her legs.  (*Id.*) Bowker needed to use a cane for standing and walking because of imbalance, weakness, and dizziness.  (*Id.* at 1154.)  She had used a cane since 2019.  (*Id.*)  Dr. Singh opined Bowker could rarely lift and carry 10 pounds and less than 10 pounds.  (*Id.*)  She could use her hands, fingers, and arms 15% of an eight-hour day to grasp, turn, and twist objects, perform fine manipulations, reach in front of her body, and reach overhead.

7

(*Id.*) Bowker would be off task for 25% or more of a typical workday. (*Id.*) Dr. Singh opined Bowker was incapable of even low stress work. (*Id.*) Bowker would be absent more than four days a month. (*Id.* at 1155.)

In June 2024, Dr. Singh completed another Physical Medical Source Statement. (*Id.* at 1450-53.) Dr. Singh opined that Bowker could sit for 20 minutes before needing to get up and stand for 20 minutes before needing to sit down. (*Id.* at 1451.) She could sit and stand/walk for less than two hours in an eight-hour workday. (*Id.*) Bowker would need to walk around for five minutes every five minutes. (*Id.*) She would need unscheduled five-minute breaks because of her chronic fatigue, pain/paresthesias, and numbness. (*Id.*) She did not need to elevate her legs. (*Id.*) Bowker needed to use a cane for standing and walking because of imbalance. (*Id.* at 1452.) Dr. Singh opined Bowker could occasionally lift and carry 10 pounds and less than 10 pounds, and she could rarely lift and carry 20 pounds. (*Id.*) She could use her hands, fingers, and arms 20% of an eight-hour day to grasp, turn, and twist objects, perform fine manipulations, reach in front of her body, and reach overhead. (*Id.*) Bowker would be off task for 25% or more of a typical workday. (*Id.*) Dr. Singh opined Bowker was incapable of even low stress work. (*Id.*) Bowker would be absent more than four days a month. (*Id.* at 1453.)

## C.     State Agency Reports

On December 17, 2017, Stephen Sutherland, M.D., reviewed the file and determined there was "insufficient evidence to fully evaluate the severity" of Bowker's allegations and no comment could be made regarding the September 24, 2016 ALJ decision. (*Id.* at 97-98.)

On March 19, 2018, on reconsideration, William Bolz, M.D., reviewed the file and determined Bowker could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.

(*Id.* at 111.)  Her ability to push and/or pull was unlimited, other than shown for lift and/or carry.  (*Id.*)  Dr.

Bolz provided the following explanation:

> I have looked at the final findings of the ALJ RFC dated 6/24/2016 and find
> that the new file does have new and material changes.  The ALJ RFC is not
> being adopted because the medical evidence from the relevant period for this
> filing does not support the severity of limitations give [sic] at ALJ [sic].
> While the ALJ decision was made just prior to the current filing's relevant
> time period, the ALJ decision covered a larger time period with additional
> evidence which may have supported the more restrictive RFC.  However,
> MER from the current relevant time period which is more restricted does not
> support the same limitations.

(*Id.*)

## D.  Hearing Testimony

During the November 19, 2024 hearing, IME Dr. Kweli Amusa, testified to the following:

- The evidence for the specific time period was "somewhat limited," so Dr. Amusa used
  "some extrapolations" based on the evidence closest to the relevant time period.  (*Id.*
  at 1187.)

- The evidence showed the following severe impairments: chronic pain with a diagnosis
  of fibromyalgia and POTS.  (*Id.* at 1188.)  Based on the cardiology notes, it seems
  Bowker's POTS and palpitations were stable on the prescribed medication.  (*Id.*)

- The treatment notes show multiple tender points of all the major joints of the upper and
  lower extremities.  (*Id.* at 1189.)  Bowker was on chronic opiate therapy for pain
  management.  (*Id.*)  Bowker used Butrans, a three-day patch, to control her pain.  (*Id.*)

- Bowker's impairments did not meet or equal a listing.  (*Id.* at 1189-90.)

- Bowker could perform jobs at a sedentary level of exertion, lifting 10 pounds
  occasionally and less than 10 pounds frequently.  (*Id.* at 1190.)  She could stand and
  walk for two hours in an eight-hour workday and sit for six hours in an eight-hour
  workday.  (*Id.*)  She could not climb ladders, ropes, or scaffolds.  (*Id.*)  She could
  perform all posturals on an occasional basis.  (*Id.*)  She must avoid temperature
  extremes, extreme vibrations, extremely uneven terrain, and unprotected heights and
  hazards.  (*Id.*)

- Bowker's chronic pain would cause good days and bad days; as a result, it was not
  unreasonable to assume that Bowker "may have one to two absences per month, even
  at the sedentary level based on the – her history of requiring treatment for the
  fibromyalgia and Dr. Singh reports that he's been treating the claimant since 2013 for

9

this condition.  So, I think it's reasonable that at a sedentary level that the claimant would have absences from work."  (*Id.* at 1190-91.)

Given the eight and a half years that had passed since Bowker's date last insured, Bowker's attorney declined to examine Bowker at the hearing and asked the ALJ to rely on the testimony from the prior hearing where Bowker testified in detail as to how she felt in 2016.  (*Id.* at 1194.)

The ALJ found no past relevant work.  (*See id.* at 1198-1200.)  The ALJ then posed the following hypothetical question:

> So, back to Ms. Klier. If you could assume a hypothetical individual of the claimant's age and education with no past work, and further assume that this individual is limited to sedentary work, with the additional limitations of never climbing ladders, ropes, or scaffolds, occasionally climbing ramps and stairs, occasionally balance, stoop, crouch, kneel, and crawl. Never working at unprotected heights or around moving mechanical parts, with only occasional exposure to extreme heat or extreme cold, and limited to perform simple, routine, and repetitive tasks but not at a production rate pace, and limited to make simple work-related decisions. Can this hypothetical individual perform other work?

(*Id.* at 1200.)

The VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as telephone quotation clerk, food and beverage order clerk, and polisher of eyeglass frames.  (*Id.* at 1200-01.)

### III.  STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Bowker was insured on her alleged disability onset date, June 25, 2016, and remained insured through June 30, 2016, her date last insured ("DLI"). (Tr. 1159-60.) Therefore, in order to be entitled to POD and DIB, Bowker must establish a continuous twelve-month period of disability commencing between

these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 25, 2016 through her date last insured of June 30, 2016 (20 CFR 404.1571 et seq.).

3.    Through the date last insured, the claimant had the following severe impairments: fibromyalgia (SSR 12-2p was considered in making this determination), osteoarthritis of the bilateral hips and shoulders, postural orthostatic tachycardia syndrome (POTS), small fiber peripheral neuropathy, anxiety disorder, and depressive disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, crouch, kneel, and crawl; can never work at unprotected heights or around moving mechanical parts, and can have only occasional exposure to extreme heat or extreme cold; is able to perform simple, routine, and repetitive tasks, but not at a production rate pace; and is able to make simple work-related decisions.

6.    The claimant has no past relevant work (20 CFR 404.1565).

7.    The claimant was born on November **, 1971 and was 44 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 25, 2016, the alleged onset date, through June 30, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 1162-69.)

## V.    STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

13

evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.    ANALYSIS

Bowker presents four assignments of error on judicial review: (1) at Step Five of the Sequential Evaluation, the ALJ committed harmful error when she found that there were a sufficient number of jobs Bowker could perform in the national economy; (2) the ALJ erred when she failed to adopt the totality of the limitations set forth by the IME in this matter; (3) the ALJ failed to support her RFC with substantial

evidence when she applied the wrong standard of review by adopting the findings of the prior ALJ; and (4) the ALJ erred when she failed to support and/or address consistency with her conclusions regarding the opinions of the treating source.  (Doc. No. 6 at 1.)  The Court addresses each of these assignments of error below, although not in the order in which Bowker presents them.

## A. Standard of Review

Bowker argues that the ALJ "still applied" the incorrect standard of review after the ALJ "erroneously" found the new application covered the same period as the prior decision.  (*Id.* at 15) (citing Tr. 1160).  Because Bowker's application covered a new period of time, even if for just a few days, Bowker asserts that the ALJ committed reversible error by making an RFC determination based on the prior ALJ decision.  (*Id.*)  Relying on this Court's decision in *DiLauro v. Commissioner of Social Security*, Case No. 5:19cv2691, 2021 WL 1175415, at **3-4 (N.D. Ohio Mar. 29, 2021), Bowker argues that "the ALJ's adoption of the findings of the prior ALJ casts a pall over the entire hearing as Plaintiff faced an unwarranted presumption that the findings of the prior hearing were correct."  (Doc. No. 6 at 18.)  Bowker maintains the ALJ "failed to independently review Plaintiff's impairments for the new period of disability," necessitating remand.  (*Id.* at 19.)

The Commissioner concedes that the ALJ "erroneously found the disability application in the current case covered the same period as the prior decision."  (Doc. No. 7 at 9.)  However, the Commissioner argues that Bowker fails to show she was harmed by that error.  (*Id.*)  The Commissioner asserts that this error is harmless "because the ALJ explicitly considered the (lack of) evidence during the relevant period in this case before adopting a substantially similar RFC to her previous application."  (*Id.* at 9-10.)  The Commissioner maintains that since "the ALJ applied AR 24-1(6) in practice, even though he [sic] erroneously stated it did not apply to this case, any error was harmless and remanding for this error would be "an idle and useless formality."  (*Id.* at 10.)

15

In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997) (relying on *Senters v. Sec'y of Health & Human Servs.*, No. 91–5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991) (per curiam)). *See also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015). In response, the Commissioner issued AR 98-4(6), which bound ALJs deciding a second disability claim to the prior ALJ's findings "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." 1998 WL 283902, at *3.

The Sixth Circuit clarified the scope of *Drummond* in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). *Earley* made clear that new regulatory framework for determining disability is a changed circumstance justifying departure from a prior ALJ's ruling, and explicitly stated that because "human health is rarely static. . . . Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Earley*, 893 F.3d at 932-33.

Effective December 2, 2024, the SSA rescinded AR 98-3(6) and AR 98-4(6) and replaced them with AR 24-1(6) to account for the Sixth Circuit's decision in *Earley*. *See* SSA Acquiescence Ruling 24-1(6), 89 Fed. Reg. 92992-02, 2024 WL 4870750.

At the beginning of the decision, the ALJ found as follows regarding AR 24-1(6):

> Under AR 24-1(6), Social Security Administration (SSA) adjudicators must consider certain findings from a prior final ALJ or Appeals Council decision as evidence when a claimant applies for disability benefits for a new period in a subsequent claim arising under the same or different title of the Act. Adjudicators must consider the findings required at each step in the sequential evaluation process from a prior decision as evidence and take into consideration factors such as the passage of time and the claimant's age and

16

physical condition when considering the prior findings as evidence in a subsequent claim. As noted in AR 24-1(6):

Where the prior finding was about a fact that is subject to change with the passage of time, such as a claimant's [residual functional capacity] RFC or the severity of an impairment(s), the likelihood that the fact has changed generally increases as the time between the previously adjudicated period and the subsequent period increases. An adjudicator generally should pay particular attention to the lapse of time between the earlier claim and the later claim and the impact of the passage of time on the claim. In situations where minimal time has passed, and no or very little new evidence has been introduced, it is more likely that the prior finding will be the same. But the adjudicator must consider all relevant facts and circumstances on a case-by-case basis. Additionally, a change in the law, regulations, or rulings affecting a relevant finding or the method for arriving at the finding may be a reason why the prior finding, considered as evidence, is properly departed from in the current determination or decision.

AR 24-1(6) does not apply to the current claim because it covers the same period as the prior decision (the alleged onset date of June 25, 2016 to the date last insured of June 30, 2016). Nevertheless, the undersigned adopted the residual functional capacity, determination on postonset substantial gainful activity, severe impairments, listing determination (with some changes in the listings themselves since the prior decision), performance of other work in the national economy determination (with different jobs cited by the vocational expert compared to the prior decision), and age category/education determination from the prior decision. In addition, the undersigned concludes that the claimant no longer has past relevant work as a teacher's aide and retail cashier as described in the prior decision based on updated earnings record and changes to the regulations regarding past relevant work classification (See SSR 24-1p and 24-2p).

(Tr. 1160.)

Here, the relevant time frame for purposes of judicial review is a six-day period from June 25, 2016, the alleged onset date, to June 30, 2016, Bowker's date last insured. This period post-dates the time frame considered by the previous ALJ when the June 24, 2016 decision was issued. The Sixth Circuit's guidance in *Earley* makes clear that *res judicata* cannot properly be applied to this case, as it covers a different time period than the prior application. The parties agree the ALJ erred in finding that the disability application in the current case covered the same period as the prior decision and that AR 24-1(6) did not apply.

"Given this inaccurate recitation of the legal effect of the prior determination, the question for [the Court's] consideration is whether, despite this misstatement of the legal standard, [the ALJ] treated [her] review of the new application as if [s]he were bound by the prior decision, thereby depriving [Bowker] of a 'fresh look.'" *Dennis D. v. Comm'r of Social Sec.*, No. 23-3667, 2024 WL 1193662, at *4 (6th Cir. Mar. 20, 2024). Because the ALJ "engaged in an in-depth review and analysis of new evidence relevant to [Bowker]'s current claim period as well as the evidence and findings from the prior decision," the Court finds the ALJ's decision comports with the Sixth Circuit's decision in *Earley*. (*Id.*)

That is not to say that the question is an easy one. At the outset, the Court is troubled by the ALJ's incorrect statement of the legal standard, particularly since the Court's prior remand was based on the ALJ's (albeit a different ALJ's) improper application of *Drummond*. (Tr. 1244-68.) However, analysis of the ALJ's decision as a whole shows that the ALJ did not consider herself "bound by the earlier ruling." *Dennis D.*, 2024 WL 1193662, at *5. At the hearing, the ALJ heard testimony from IME Dr. Amusa. (Tr. 1186-94.) Throughout the decision, the ALJ discussed medical evidence from December 2016, which post-dated the prior decision and Bowker's date last insured. (*Id.* at 1164-67.) The ALJ considered and analyzed the testimony from Dr. Amusa in the RFC analysis. (*Id.* at 1166.) Unlike the February 2023 ALJ decision that resulted in this Court's 2024 remand, the current ALJ decision lacks reference to being bound by *Drummond*. (*See* Tr. 1210 n.1) ("[A] as of the date of this decision, the Commissioner of Social Security has not issued a new Acquiescence Ruling relating to the Sixth Circuit's holding in Earley. Consequently, while the holding in Earley has been considered, the undersigned remains bound by duty to the Commissioner to apply the instructions within the *Drummond* AR to the claimant's current applications.")

As the Sixth Circuit explained in *Earley* and recently reaffirmed in *Dennis D.*, "to promote 'finality, efficiency, and consistent treatment of like cases,' it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding." *Dennis D.*, 2024 WL 1193662, at *6 (citing *Earley*, 893 F.3d at 933). And

18

in cases such as this one, where the claimant offers "'very little new evidence' in a new application, then such a claimant should generally 'not have high expectations about success for their subsequent application.'" *Id.* The Court finds that the ALJ did not consider herself bound by the prior decision, instead considering the prior decision, as well as Bowker's "proffered evidence pertinent to the unadjudicated period[,] to fashion [Bowker]'s RFC." *Id.* As the ALJ analyzed Bowker's claim consistent with *Early*, the Court finds no reversible error.

## B. Medical Opinion Evidence

### 1. Independent Medical Expert

Bowker argues that the ALJ erred in failing to "adopt the totality of the limitations" opined by IME Dr. Amusa at the hearing. (Doc. No. 6 at 12.) Bowker asserts that the while the ALJ found Dr. Amusa's opinion "mostly persuasive," the RFC did not contain the additional restriction that Bowker would miss work one to two days a month because of her impairments. (*Id.*) Bowker further argues that the ALJ "failed to support her explanation and determination for only adopting those elements which were inconsistent with the desired RFC." (*Id.* at 12-13.) Bowker maintains this was harmful error, as the VE testified that one to two absences a month was work preclusive. (*Id.* at 12.)

The Commissioner responds that the Court should reject Bowker's argument, as the ALJ "explained that Dr. Asuma's opinion as to potential absenteeism was not supported by or consistent with the record." (Doc. No. 7 at 6.) The Commissioner asserts that the ALJ was not required to use the term "supportability"; rather, the ALJ needed only to explain whether the opinion was supported by objective medical evidence. (*Id.*) (citations omitted).

Since Bowker's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See*

*Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability;[4] (2) consistency;[5] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior

---

[4] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[5] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)).  A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

In the RFC analysis, the ALJ weighed and analyzed Dr. Amusa's opinion as follows:

The undersigned finds the opinions of the medical expert, Dr. Amusa mostly persuasive, who concluded that the claimant should be limited to a range of sedentary level work with the additional restriction of missing work one to two absences per month due to her impairments (current hearing testimony).

21

These opinions are mostly consistent with the above residual functional capacity, as well as the claimant's medical records and limited treatment history. Moreover, Dr. Amusa had the advantage of appearing at the hearing and reviewing the entire record before reaching her conclusions. **However, the undersigned finds the conclusion that the claimant would miss work on a monthly basis inconsistent with the medical record as a whole prior to the date las [sic] insured. As noted herein, the claimant had a very limited and conservative treatment history prior to the date last insured, she admitted seeing a positive response to her treatment, and her diagnostic and clinical findings were unremarkable.**

(Tr. 1166) (emphasis added).

The ALJ considered the supportability and consistency of Dr. Amusa's opinion as required by the regulations, discussing evidence that was unsupportive of disability in the process. (*Id.* at 1165-66.) As the Commissioner states, the ALJ need not use the term "supportability" in the analysis to comply with the regulations: "Importantly, the ALJ was not required to explicitly use the word 'supportability,' he simply needed to explain whether the opinion was supported by objective medical evidence." *Pifer v. Comm'r of Soc. Sec. Admin.*, 1:21-CV-00314-CEH, 2022 WL 1521911, at *11 (N.D. Ohio May 13, 2022) (citing 20 CFR § 404.1520c; *Dallas v. Comm'r of Soc. Sec.*, No. 1:20-CV-1720, 2021 WL 5428827, at *12 (N.D. Ohio Oct. 26, 2021), *report and recommendation adopted,* 2021 WL 5416718 (N.D. Ohio Nov. 19, 2021)).

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Bowker would weigh the evidence differently, it is not for the Court to do so on appeal. Again, the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73.

There is no error.

**2. Treating Source**

Bowker argues that the ALJ's finding that Dr. Singh's opinions were unpersuasive "was not supported by nor consistent with the evidence cited in [the ALJ's] opinion." (Doc. No. 6 at 23.) Bowker

22

asserts that the ALJ "failed to address the persuasiveness of the contrary evidence establishing support and consistency" as outlined in Bowker's brief.  (*Id.*)

The Commissioner responds that substantial evidence supports the ALJ's finding that Dr. Singh's 2019, 2023, and 2024 opinions were unpersuasive.  (Doc. No. 7 at 8.)  The Commissioner argues that the ALJ explained that Dr. Singh's opinions "were inconsistent with the medical record prior to Plaintiff's date last insured, her limited and conservative treatment history, her admittedly positive response to treatment, and her generally benign diagnostic and clinical findings directly after the [date] last insured."  (*Id.*)  In addition, the ALJ found Dr. Singh "provided little explanation or supporting evidence for the extreme limitations he set forth aside from listing claimant's diagnoses and subjective allegations which were not fully consistent with the medical records from December 2016…."  (*Id.*)  Finally, the ALJ determined that these opinions were provided "several years" after Bowker's date last insured, and therefore "did not reflect Plaintiff's level of functioning during the five-day period at issue in this case."  (*Id.* at 9.)

The ALJ weighed and analyzed Dr. Singh's opinions as follows:

> The undersigned finds the assessments of Dr. Singh unpersuasive. In June of 2019, Dr. Singh limited the claimant to much less than sedentary level work, such as standing/walking one hour per workday, sitting for four hours per workday, lifting and carrying up to five pounds, and never crouching, kneeling, or crawling (Exhibit C7F). In January of 2023, Dr. Singh concluded that the claimant is limited to much less than sedentary level, including sitting and standing/walking for less than two hours each per workday, requiring unscheduled breaks during the workday, requiring a cane or ambulatory device, using her hands 15 percent of the workday, being off task 25 percent of the workday, and missing more than four workdays per month due to her impairments (Exhibit C17F). In June of 2024, Dr. Singh completed an assessment with very similar restrictions to his January of 2023 assessment, such as being off task 25 percent of the workday, being incapable of even "low stress work," using her hands 20 percent of the workday, missing four workdays per month (Exhibit C19F). These opinions are inconsistent with the medical record prior to the date last insured, including the claimant's limited and conservative treatment history, her admitted positive response to her treatment, and her generally benign diagnostic and clinical findings directly after the date last insured Exhibit C1F, pg. 14). Moreover, Dr. Singh's assessments from 2019, 2023, and 2024 were rendered several years after the

> date last insured in 2016 and do not reflect the claimant's level of functioning during the period at issue. Finally, Dr. Singh provided little explanation or supporting evidence for these extreme limitations aside from largely listing the claimant's diagnoses and subjective allegations, which are not fully consistent with the medical record for the reasons listed above.

(Tr. 1167.)

The ALJ considered the supportability and consistency of Dr. Singh's opinions as required by the regulations, discussing evidence that was unsupportive of disability in the process.  (*Id.* at 1165-67.)  It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here.  While Bowker would weigh the evidence differently, it is not for the Court to do so on appeal.

In addition, as the Commissioner notes, the ALJ was entitled to find Dr. Singh's opinions unpersuasive because they were not accompanied by an explanation of the limitations. The regulations specify that an opinion's persuasive value is based on both the objective evidence and "supporting explanations." *Duke v. Comm'r of Soc. Sec.*, Case No. 21 CV 39, 2022 WL 1075171, at *3 (N.D. Ohio April 11, 2022) (citing 20 C.F.R § 404.1520c). "Courts frequently find that check-box forms, unaccompanied by explanation, are unsupported. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("The Court has held that an ALJ properly discounted a treating source's questionnaire because the source failed to provide any explanation for his responses) (quotation omitted); *Gallagher v. Berryhill*, 2017 WL 2791106, at *8 (N.D. Ohio June 12, 2017)."  *Duke*, 2022 WL 1075171, at *3.  *See also Rambo v. Comm'r of Soc. Sec.*, No. 1:24-CV-00129, 2024 WL 3813417, at *7 (N.D. Ohio July 9, 2024) (finding opinion in "checkbox format and contain[ing] nothing more than Claimant's diagnoses to support the opined limitations" to be "patently deficient"), *report and recommendation adopted by* 2024 WL 4532777 (N.D. Ohio Oct. 21, 2024).

Here, Dr. Singh's opinions do not provide an explanation for the opined limitations beyond listing Bowker's diagnoses and symptoms and citing to treatment notes from September 2017 to June 2024.  (Tr.

330-33, 444-47, 1152-55, 1450-53.) For this additional reason, the ALJ was entitled to find Dr. Singh's opinions unpersuasive. *Duke*, 2022 WL 1075171, at *3; *Rambo*, 2024 WL 3813417, at *7.

In addition, the earliest medical records on which Dr. Singh relies for his opinions post-date Bowker's date last insured by over a year, and therefore the ALJ reasonably concluded Dr. Singh's opinions did not reflect Bowker's functioning at the time of her date last insured. *See, e.g., Mayer v. Commr. of Social Sec.*, 2020 WL 415522, at *8 (N.D. Ohio Jan. 27, 2020) ("However, since this case is limited to DIB, evidence that post-dates the date last insured is not relevant, except to the extent that it bears on Plaintiff's functioning from the alleged onset date through the date last insured.") (citing *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir.1976) ("stating that '[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time'"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) ("finding medical evidence post-dating the date last insured may be considered but a delay of several years rendered it 'minimally probative'"); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) ("finding that treating physician's opinion was 'minimally probative' because it post-dated the expiration of his insured status by eight months.")).

Again, the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73.

## C. Step Five

Bowker argues the ALJ committed reversible error when she found that there were a sufficient number of jobs in the national economy that Bowker could perform. (Doc. No. 6 at 9.) Bowker asserts that the VE identified "only 8,053 jobs in the national economy." (*Id.* at 10.) Bowker maintains that under Sixth Circuit precedent, "[a] total of 8000 positions in the national economy fails to satisfy the requirement at

Step Five that a significant number of jobs exist in the national economy which a person could perform." (*Id.* at 10-11.)

The Commissioner responds that "[b]ecause 8,035 jobs is above the 'significant' numbers of other courts, it was not unreasonable for the ALJ to find this number significant for the purposes of Step Five." (Doc. No. 7 at 12) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) ("6,000 national jobs and 200 local jobs were significant"); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578-79 (6th Cir. 2009) ("2,000 national jobs")).  The Commissioner argues that "Plaintiff's counsel recently made the identical argument in this Court—including citing essentially all of the same case law—that 6,800 jobs in the national economy was not a significant number," which this Court rejected.  (Doc. No. 7 at 12) (citing *Hardie v. Comm'r of Soc. Sec.*, No. 5:23-cv-1848, 2024 WL 3370539, at *9-10 (N.D. Ohio April 18, 2024), *report and recommendation adopted by* 2024 WL 3370539 (N.D. Ohio July 11, 2024)).  The Commissioner asserts that Bowker "failed to cite" *Hardie* "despite it being directly on point as to this issue."  (Doc. No. 7 at 13.)

Bowker's Step Five argument is not well-taken.  In *Hardie*, the undersigned rejected a similar argument—except it involved less jobs in the national economy than present here—as follows:

> In order to support a finding that an individual is not disabled at the last step of the sequential evaluation, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience (20 CFR 416.912 and 416.960(c)). The Sixth Circuit has explained:
>
> > That an ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs "should consider many criteria in determining whether work exists in significant numbers." *Hall v. Bowen,* 837 F.2d at 275. It is why we have said "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number." *Id.* And it is why substantial evidence review applies. *See id.; see also* 42 U.S.C. § 405(g).

*Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016). In *Taskila*, the Sixth Circuit held that 200 local jobs and 6,000 national jobs were "significant." In another case, the Sixth Circuit held 2,000 jobs was significant. *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 579 (6th Cir. 2009) (finding 2,000 jobs significant). Though Hardie cites some caselaw in support of her argument, this Court has rejected arguments identical to those Hardie presents:

> Claimant's references to various cases outside this district are only marginally relevant to the instant case since this is a fact-specific inquiry that depends upon the unique circumstances of the case. *See Hall*, 837 F.2d at 275. Thus, this Court is not bound by other courts' specific findings related to their unique factual circumstances—especially courts outside this district and circuit. Further, Claimant's reliance on *Tapp* does not establish his argument. (ECF No. 10, PageID #: 699–700). In *Tapp*, the court held that a few hundred regional jobs, 2,000 state jobs, and 30,000 national jobs constituted an insignificant number but failed to explain why. *See* 1991 WL 426310, at *1.[5] The opinion is two pages, and as discussed above, because of the unique facts of every case, the circumstances of the case will dictate varying "significant" numbers. *See Hall*, 837 F.2d at 275.[6] As substantial evidence supports this ALJ's finding that 14,000 jobs was a significant number and the finding does not conflict with Sixth Circuit precedent, this Court sees no reason to disturb the ALJ's ultimate disability finding.

> *Kutyba v. Comm'r of Soc. Sec. Admin*, No. 5:22-CV-00483-CEH, 2023 WL 1438853, at *10 (N.D. Ohio Jan. 31, 2023). In addition to this Court's prior findings, as the Commissioner points out, the *Tapp* case cited by Hardie and the claimant in *Kutyba* predates the Sixth Circuit's opinions in *Taskila* and *Nejat*. As substantial evidence supports the ALJ's finding that 6,800 jobs was a significant number and the finding does not conflict with Sixth Circuit precedent, the ALJ's finding should not be disturbed.

*Hardie*, 2024 WL 2941165, at **9–10.  In adopting the undersigned's Report & Recommendation over Hardie's objections, the Court found that "it was not unreasonable for the ALJ to find 6,800 jobs significant for the purposes of Step Five" and concluded that "that substantial evidence support[ed] the ALJ's finding that there were a significant number of jobs in the national economy." *Hardie*, 2024 WL 3370539, at *3. The Court finds the reasoning in the *Hardie* cases to be persuasive. As substantial evidence supports the the ALJ's finding that 8,035 jobs was a significant number, and the finding does not conflict with Sixth Circuit precedent, the ALJ's finding shall not be disturbed.

**D. Failure to Disclosure**

As the Commissioner notes, Bowker's counsel—an experienced attorney in Social Security law—was counsel for Hardie and therefore aware of this Court's rulings in that case. Bowker's counsel failed to disclose, let alone attempt to distinguish, this Court's reasoning in *Hardie* from the case at bar. Bowker did not file a reply brief to respond to the Commissioner's arguments regarding *Hardie* or offer an explanation for counsel's failure to disclose this authority to the Court.

Ohio Rule of Professional Conduct 3.3(a)(2) prohibits an attorney from knowingly failing to disclose adverse authority, which is sanctionable conduct under Federal Rule of Civil Procedure 11. *See Dick's Sporting Goods, Inc. v. Boydston*, No. 2:14–cv–02360–JPM–dkv, 2015 WL 730072, at *4 n.1 (W.D. Tenn. Feb. 19, 2015). "Serious sanctions for the violation of the obligation to cite directly contrary authority are usually limited to cases in which the lawyer or his associates were involved in the development of the prior precedent, as in the present case." *Matthews v. Kindred Healthcare, Inc.*, No. 05–1091–T–AN, 2005 WL 3542561, at *5 n.4 (W.D. Tenn. Dec. 17, 2005) (collecting cases).

The Court is disturbed by counsel's failure to disclose *Hardie*, especially considering the recentness of the decisions and that both decisions were issued well before counsel filed the initial brief in this case. However, the Court notes that the Commissioner did not file a Rule 11 motion or otherwise request sanctions for Bowker's counsel's failure to disclose *Hardie*. In addition, Bowker's Step Five argument was not the sole assignment of error presented on judicial review. For these reasons, the Court declines to issue an order to show cause but advises Bowker's counsel that any such conduct in future cases shall result in an order to show cause as to why sanctions should not issue.

## VII.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: January 20, 2026

    _s/ Jonathan Greenberg_
 Jonathan D. Greenberg
 United States Magistrate Judge